706 P.2d 1246

**MOUNTAIN STATES LEGAL FOUNDA-TION and the Arizona Tax Research Association, on Behalf of their individually named members, and Richard Udall, Myrna Udall, Gary McDonald and Dianne McDonald, individually residents and property taxpayers in Apache County, Plaintiffs-Appellants,**

v.

**APACHE COUNTY and the Board of Supervisors of Apache County, Defendants-Appellees.**

**No. 1 CA–CIV 7347.**

Court of Appeals of Arizona, Division 1, Department D.

Sept. 3, 1985.

Platt & Hall, P.C. by Michael Platt, St. Johns, and Mountain States Legal Foundation by Michael R. Perna and K. Preston Oade, Jr., Denver, for plaintiffs-appellants.

Stephen G. Udall, Apache Co. Atty. by Russell H. Burdick, Jr., Deputy Co. Atty., St. Johns, for defendants-appellees.

## OPINION

MEYERSON, Presiding Judge.

This is an appeal from an order of the superior court granting summary judgment in favor of appellees Apache County and its board of supervisors (collectively referred to herein as Apache County). Appellants Mountain States Legal Foundation, the Arizona Tax Research Association, Richard and Myrna Udall, and Gary and Dianne McDonald (collectively referred to herein as taxpayers), filed this action to invalidate Apache County's exclusion of the county free library system tax and the county's contribution to fire districts from the *ad valorem* tax levy limitation imposed by art. IX, § 19 of the Arizona Constitution. We affirm in part and reverse in part.

The parties stipulated that the levy limitation calculated by Apache County for fiscal year 1982–83 was $204,058. It was undisputed that during that fiscal year Apache County projected a tax levy of $10,800 for the county free library system, and $63,983 to finance its contribution to volunteer fire districts. It was also undisputed that Apache County excluded both these amounts from the calculation of its levy limitation.

The parties filed cross-motions for summary judgment. The trial court entered summary judgment for Apache County and

against taxpayers on all counts. The trial court also held, *sua sponte,* that appellant Mountain States Legal Foundation (Foundation) had no legal standing as a plaintiff in the action, and dismissed it as a party on that basis.[1] Taxpayers timely appealed.

## I. CONSTITUTIONAL AND STATUTORY BACKGROUND

By special election on June 3, 1980, the voters of Arizona approved a constitutional amendment to place taxing restraints on local governmental bodies. Proposition 107, which was subsequently to become art. IX, § 19, became effective on June 28, 1980, and was made applicable for all tax years after December 31, 1981. The portions of the amendment relevant to the issues in question here state:

(1) The maximum amount of ad valorem taxes levied by any county, city, town or community college district shall not exceed an amount two per cent greater than the amount levied in the preceding year.

(2) The limitation prescribed by subsection (1) does not apply to:

. . . . .

(b) Ad valorem taxes or assessments levied by or for property improvement assessment districts, improvement districts and other special purpose districts other than counties, cities, towns and community college districts.

The voters apparently accepted the argument of the proponents of the constitutional amendment that unrestricted government spending at all levels contributes to, or even creates, inflation. The rationale underlying the amendment is that excessive spending can be curbed by placing limits on the property taxation powers of local governmental units. The primary effect of art. IX, § 19, is to limit increases in the ad valorem taxes levied by any county, city, town or community college district to a maximum of two percent in any year

---

1. The Foundation has attached to its brief documentary materials in support of its claim of standing. These documents were not included in the superior court record. Based upon the information before the trial court, we cannot conclude that it erred in holding that the Foundation lacked standing to assert the interests of its members.

above the amount levied in the preceding year. However, the amendment expressly excepts certain ad valorem taxes or special assessments levied (1) for specific purpose bonded indebtedness or other long-term obligations; (2) "by or for property improvement assessment districts, improvement districts and other special purpose districts other than counties, cities, towns and community college districts;" and (3) for county support of certain school districts. *Id.*

The two percent limitation was intended to be incorporated into the computation for allowable property taxes for subsequent years regardless of whether the political subdivision actually levied the taxes to the extent permissible. The amendment further permitted voters within the political subdivision to authorize tax levies in excess of the two percent limit through override elections. The legislature was directed to enact laws to implement the amendment.

Enabling legislation was subsequently enacted. Among other things, the legislature classified taxes as being either "primary" or "secondary." "Primary property taxes" are "all ad valorem taxes except for secondary property taxes." A.R.S. § 42–201(7) (Supp.1984). "Secondary property taxes" are

> ad valorem taxes or special property assessments used to pay the principal of and the interest and redemption charges on any bonded indebtedness or other lawful long-term obligation issued or incurred for a specific capital purpose by any municipality, county or taxing district, and amounts raised by ad valorem taxes or assessments levied by or for assessment districts and for limited purpose districts other than school districts and community college districts and amounts levied pursuant to an election to exceed a budget, expenditure, or tax limitation.

A.R.S. § 42–201(9) (Supp.1984). Primary taxes are those which are subject to the constitutionally imposed levy limitation, and secondary taxes are those which are

not. *See* A.R.S. § 42–301 (Supp.1984).[2] By so classifying ad valorem taxes, the legislature has evidenced its purpose of imposing a limitation on the maintenance and operational expenses of local governments (primary taxes) while preserving the right of these entities to exceed the limitation in certain limited circumstances (secondary taxes). The latter, generally speaking, include expressly designated special, specific or limited purpose taxes or assessments. Thus, secondary property taxes refer to those taxes *outside* of the constitutionally imposed levy limitation.

## II. THE COUNTY FREE LIBRARY SYSTEM TAX

■ For the tax year in question, Apache County assessed $10,800 for the "county free library system." This tax was levied pursuant to the authority of A.R.S. § 11–912. Taxpayers contend that the library tax is a primary tax and therefore subject to the levy limitation. Apache County contends that the library system is a special purpose district and therefore exempt from the levy limitation. We hold that the library tax is a primary tax and thus subject to the levy limitation.

Our conclusion is based upon a 1981 amendment to A.R.S. § 11–912(A). Prior to the 1980 constitutional change, A.R.S. § 912(A) provided that the board of supervisors "shall annually levy in the same manner and at the same time as other county taxes are levied, and in addition to all other taxes," a tax sufficient to pay the expenses of the library system. In 1981, the statute was amended to read:

> The board of supervisors, after a county free library is established, shall annually levy in the same manner and at the same time as other county *primary property* taxes are levied, and in addition to all other taxes, a ... tax sufficient to insure the payment of ... expenses of the county free library system.

Laws 1981, ch. 317, § 4 (emphasis added). We think it is self-evident that the legisla-

---

2. *But see* A.R.S. §§ 15–994, 42–301(E) (Supp. 1984) (county tax levied for equalization assistance for education is expressly exempted from the levy limitation).

ture intended that the library tax be considered a primary property tax and subject to the levy limitation.

Apache County's primary argument is that the library system is a "special purpose district" and therefore excluded from the levy limitation. Special purpose districts are those enumerated in the Arizona Constitution, art. XIII, § 7, or established by the legislature pursuant to its sovereign powers. *Industrial Dev. Auth. v. Nelson,* 109 Ariz. 368, 375, 509 P.2d 705, 712 (1973). Special purpose districts are political subdivisions of the state and are vested with all of the "rights, privileges and benefits" granted municipalities. Ariz. Const. art. XIII, § 7. Special purpose districts typically have an independently elected governing body,[3] the power to levy and collect taxes,[4] and a corporate existence separate and apart from any other political unit.[5] *See generally 3A C. Antieau, Local Government Law* (1983).

The county free library system is simply not a special purpose district. No separate legal entity is established under the enabling legislation. A.R.S. §§ 11–901 to 11–916. Unlike a district which is controlled by a board of directors, the library system is "under the general supervision of the [county] board of supervisors." A.R.S. § 11–909(A). The library system has no direct taxing authority; its expenses are solely defrayed by revenues raised by the board of supervisors. A.R.S. § 11–912. Finally, expenses affiliated with the county library system appear to be the type of operational and maintenance expenses of local government intended by the legislature to be subject to the levy limitation.

■ We also reject Apache County's contention that including the library tax within the levy limitation would violate the territorial uniformity requirement of art. IX, § 1, of the state constitution. This section pro-

vides in part that "[a]ll taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax." The county notes that the Town of Springerville has voluntarily chosen not to participate in the library system. A.R.S. § 11–903(B). It argues that because of this exclusion, "if the county is the taxing entity the uniformity clause is violated." But the legislature has expressly provided that property within such excluded communities is not subject to the library system tax. A.R.S. § 11–903(B). Therefore, the uniformity provision is satisfied because only those areas in the county which benefit from the library system are subject to the tax. *See Apache County v. Atchison, Topeka and Santa Fe Ry. Co.,* 106 Ariz. 356, 359–60, 476 P.2d 657, 660–61 (1970).

## III. THE FIRE DISTRICT CONTRIBUTION

■ Apache County contributed $63,983 to fire districts during the year in question. This sum was raised through property taxes and excluded from the levy limitation. It was therefore categorized as a secondary tax. Taxpayers contend that because $63,983 is contributed to the fire districts from the county general fund, the contribution is an expenditure and not a tax and therefore must be included under the primary tax category. We agree with Apache County that its "contribution" must be considered as a secondary tax.

Fire districts were originally formed as volunteer fire companies. *See generally Frye v. South Phoenix Volunteer Fire Co.,* 71 Ariz. 163, 224 P.2d 651 (1950). Today, fire protection for unincorporated areas is provided through volunteer fire districts established following an election conducted by a county board of supervisors.

---

3. *E.g.,* A.R.S. § 45–961 (Supp.1984) (agricultural improvement district); A.R.S. § 45–1611 (irrigation district).

4. *E.g.,* A.R.S. §§ 30–571 to 30–577 (electrical district).

5. *See* A.R.S. §§ 9–1151 to 9–1156 (industrial development authority).

A.R.S. § 9–1001 (Supp.1984).[6] Operating revenues for fire districts are derived from two sources. First, the county board of supervisors "shall pay into the fire district fund .... from the county general fund" an amount equal to sixty cents per $100 of taxable valuation on the property located within each fire district. A.R.S. § 9–1005(A) (Supp.1984). Second, the supervisors are required to levy a "fire district tax," A.R.S. § 9–1005(E) (Supp.1984), on all property within a fire district's boundaries in an amount not to exceed $2.60 per $100 of taxable valuation. A.R.S. § 9–1005(C) (Supp.1984).

Taxpayers concede that the tax levied pursuant to A.R.S. § 9–1005(C) is a secondary tax. They contend, however, that the contribution from the general fund is an "expenditure" and therefore not a tax. Hence, according to taxpayers, the contribution cannot be a secondary tax outside the levy limitation. We disagree.

Initially, volunteer fire companies received no financial support from the counties. Revised Code of 1928 § 1511. But after the Arizona Constitution was amended in 1940 to allow for a vehicle license tax, Ariz. Const. art. IX, § 11, the counties were authorized to pay into the "volunteer fire company fund" a percentage of the value of vehicles registered in the area served by the fire company. Laws 1941, ch. 49, § 1. In 1977, this statute was amended to provide for a contribution based upon the "taxable valuation of all property within the boundaries" of the fire district. Laws 1977 ch. 107, § 1. The statute now requires the counties to pay into each fire district fund "an amount equal to sixty cents per one hundred dollars of taxable valuation" of property within the district boundaries. A.R.S. § 9–1005(A) (Supp.1984). The source of the contribution was changed because of the expense and difficulty faced by the counties in maintaining records of vehicle ownership within the fire districts. Hearing on S.B. 1046, Arizona House of Representatives, Committee on Counties and Municipalities, May 5, 1977.

It is apparent that the legislature intended that the source of the contribution[7] be an ad valorem tax on property within the fire district. Although Apache County's general fund is derived from revenue sources other than property taxes, A.R.S. § 11–492, it is clear that property taxation is the legislatively approved means of financing this contribution. It has been stipulated in this case that the County contributed $63,983 to fire districts and that this sum was raised through a property tax. We therefore conclude that the levy limitation is not applicable to Apache County's contribution to the fire districts because the contribution is based upon an ad valorem tax levied for a special purpose district. Ariz. Const. art. IX, § 19.

In summary, we hold that the library system tax is a primary tax and Apache County's contribution to the fire district fund is a secondary tax. The trial court correctly ruled that the Foundation lacked standing to assert the interests of its members. The summary judgment is affirmed in part and reversed in part.

GRANT and HAIRE, JJ., concur.

6. In 1985, the statutes pertaining to volunteer fire districts were transferred and renumbered for placement in Title 48. Laws 1985, ch. 190, § 6. In this opinion, the statutes will be referred to as they were numbered prior to the 1985 change.

7. Taxpayers' characterization of the contribution as an expenditure appears to be incorrect. The Arizona Constitution defines expenditure as "any authorization for the payment of local revenues." Ariz. Const. art. IX, § 20(3)(C). Local revenues are "funds, fees, fines, penalties, tuitions, property and receipts of any kind whatsoever received by or for the account of a political subdivision or any of its agencies, departments, offices, boards, commissions, authorities, councils and institutions." Id. § 20(3)(d). Because the property tax authorized under A.R.S. § 9–1005(A) (Supp.1984) is levied for fire districts and not for the county or any of its departments or agencies, the revenues are not local revenues and therefore the county's contribution is not an expenditure within the constitutional definition.